May it please the Court, my name is Angela Hansen, I'm an Assistant Federal Public Defender and together with Robin Packle, we represent the appellant, Keithon Triggs. This is a habeas case. Mr. Triggs, it is undisputed, has a 30-year history of significant mental illness. He was first diagnosed with paranoid schizophrenia at age 15 and those diagnoses continued and they were well documented until his three-strike trial in 1995. What Mr. Triggs needed was mental health treatment, along with treatment for a drug addiction, an addiction that was used to self-medicate from his mental illness. He did not get that treatment. Instead, in 1995, he was sent to custody for life without the possibility of parole until 25 years. Now, we have presented the Court with three grounds in the habeas petition which could be granted. The first is a confrontation ground, the second is the competency issue, and the third is the Eighth Amendment. I'm going to focus my argument today on the first two issues, but before I do that, I do want to reserve three minutes for rebuttal. Before I address the confrontation issue under the Sixth Amendment, this is a unique habeas case in that the Court is not bound by the deferential standard under 2254 D1, and that's because in 2005, Mr. Triggs filed a habeas petition with the issues that are before this Court, and that 2005 petition was filed before the California Supreme Court, and that Court denied Mr. Triggs on procedural grounds. As a result, there is no decision on the merits for the issues presented before the Court for this Court to defer to. As a result, we are here under de novo review. On the confrontation issue. But you're contending that you exhaust or that he exhausted that issue. Is that an inconsistent argument? No, Your Honor, because the government would have, the State rather, would have needed to raise that Mr. Triggs has defaulted or waived his arguments by not doing so in the district court. The State has waived that as an argument. Well, the State, no, the State contends that the California Supreme Court decided on the merits. It was fairly presented on the merits. You think not. Absolutely not. The first issue, Your Honor, the confrontation, was partially presented to the California – I'm sorry, the California appellate court, partially in that it was only the hearsay argument. It had nothing to do with the screen issue, which we're contending is the confrontation problem today. As for the competency, Your Honor, nothing in the California appellate court on that issue. It was raised for the first time in 2005 in the habeas petition that Mr. Triggs filed before the California Supreme Court. Nothing in the appellate court opinion on that issue. On the Eighth Amendment issue, there is some language in the California appellate court about the Eighth Amendment issue. However, it didn't include all the facts that were presented to the habeas court. That was presented again in 2005 and denied by the Supreme Court in 06. So is it your argument that it was fairly presented to the California courts, but they denied it on procedural grounds, and therefore we don't need to – we don't have a reasoned decision, or is it that it's unexhausted? It's the first, Your Honor. Okay. It's the first. The confrontation issue is significant. We're not asking this Court to necessarily reverse Reed and Guerrero, the two State court cases that say that the State may look to a preliminary hearing transcript to prove elements of a prior that were not proven at the earlier trial. That is what we would like this Court to do, but the Court need not do that. Those cases set forth the unavailability argument that the fact that the State cannot present evidence outside of the prior conviction doesn't necessarily mean that the witnesses – excuse me – means that the witnesses are thus legally unavailable. We do not agree with that Court. We believe the unavailability rule is part of confrontation. So if they had tried to call the witnesses at the trial, that seems to me that the superior court would have said you can't. That's legally unavailable. That's right. That's it. You can't. That's what Reed and Guerrero said. And that is correct. That would have been the rule. They couldn't have then proven that additional element with those witnesses under Reed and Guerrero. They had to rely on the preliminary transcript. That's exactly right. The problem with the preliminary hearing transcript, however, and this is the more important confrontation issue, is that the screen was used in 1982 to prevent Mr. Triggs from seeing the witness and the witness from seeing Mr. Triggs. And confrontation does require face-to-face, not just cross-examination. I thought Mr. Triggs, or his lawyer at least, asked for the screen. I'm so glad the Court mentioned that. That is what the district court said in its opinion, and that is absolutely erroneous. The Court is mistaken, and I will give the Court the record. ER 226, 227, 228, and 229. Well, at some point the screen is lifted, right? It is lifted only at the end, Your Honor. What happens is there is a quick identification, and the questions with respect to identification is when it's lifted. It is up through the entire direct examination and cross-examination, and then it's lifted for identification purposes only. But there was going to be an in-court identification, and I thought the screen was for the purposes of the defendant's benefit. The defense attorney objected, Your Honor. What should have happened was there should have been a lineup ahead of time. But for efficiency reasons, the trial court in 1982 said, no, we can use the screen, which was suggested by the prosecution, not the defense lawyer. And the defense lawyer continuously objected to the proceedings. In fact, he objected so much that the Court told him that that was enough. He didn't need to keep repeating his objection to the procedure that was used. So the screen itself. But the objection was to the identification, not necessarily the screen, right? No. There's a quote that I'll point the Court to at the excerpts of record at 229. After the screen was placed, the trial court asked defense counsel if he was satisfied that Triggs could not be seen. And the counsel said yes, but that he reserved his objection. And that's at the point when the Court told him that he could stop objecting. He was objecting to the entire procedure, not doing the lineup, using the screen, and proceeding in the fashion that they proceeded. So your argument really is, you know, the confrontation. He didn't want to cross-examine. He wanted to see them physical. Yes. And United States v. Coy, excuse me, it may not be United States v. Coy. The Coy decision from the Supreme Court, Justice Scalia says that face-to-face confrontation is part and parcel of the Sixth Amendment. It's not absolute. And I think the Craig case tells us that. There are sometimes exceptional reasons why, but they must be made and found in the record. Here, the only reason we have the screen is because in 1982, the judge did not want to delay the proceedings to allow for the lineup to happen. And as a result, it should not have been used in Mr. Trigg's case. Now, I do want to point out that in Reed, Reed is the California court that says you can't go beyond the record, and therefore your witnesses are legally unavailable. But Reed also has a footnote in it. It's footnote number one that says we are not saying that everything can come in. Sometimes there will be circumstances where this is constitutionally flawed, and in this case, we believe, in Mr. Trigg's case, it is constitutionally flawed to allow this preliminary hearing transcript in when a screen was used and there was an additional significant fact that needed to be proven in a three-strike trial, and this was the only way to prove it. They shouldn't have been able to do so. And on this ground, we believe the petition should be granted. I'd like to move on to the competency, unless the Court has any additional questions on the confrontation. The competency issue we've raised in three parts, but I'm going to focus the Court on the part that has to do with the district court's obligations. In part because the ineffective assistance ground, it seems that under Miles, this Court's 1997 habeas case, that the standard is lower for what the district court is required to do than would be required for there to be a finding of ineffective assistance of counsel. And the district court is not the U.S. district court. Oh, that's absolutely right, Your Honor. I'm talking about California land. That's right. The trial court. The trial court, exactly. I'm used to practicing in district court. Excuse me. The trial court in Triggs had an obligation, independent legal duty, to assess Mr. Triggs's competency. It had to bring it to his attention and the judge's attention. It had to be brought. And it was, Your Honor, in several ways. And the Court, the standard is if there's a bona fide doubt as to the defendant's competency, a hearing should be held. And there are two parts to competency. It's the appearance, whether or not someone appears to understand the proceedings around them. And I think that's where the trial court and the district court in this case got caught up. The second prong is the ability to aid and assist in the defense. Now, Mr. Triggs, according to the district court and the trial court, appeared to understand the proceedings, given he testified at trial. However, when one looks beyond his testimony and at the prior history of his mental illness and the chronic paranoid schizophrenia, it's clear that he has delusions. He has hallucinations. He has paranoia such that it is difficult for him to be able to aid and assist in his defense, or at least there's enough of a showing that a hearing should be held on that issue of competence. Bona fide doubt, according to the Blazak case, means just sufficient doubt, a good-faith doubt, a reasonable doubt. So who brought it to the judge's attention? It was brought in several ways. The judge, in 1994, just before the three-strike trial, this is also a unique situation, had Mr. Triggs before her. The trial court presided over a, I think it was a hand-to-hand sale of crack cocaine shortly before the three-strike case. And the trial court said, after reading the entire probation report and granting Mr. Triggs probation, that he has a history of mental illness. It was brought to the court's attention in that way. It was also brought to the court's attention through trial counsel raising issues about Mr. Triggs' strike, excuse me, prior convictions and why they should be stricken for competency grounds. So trial counsel brought it to the court's attention in connection with his prior offenses, that he was incompetent at the time of the 1982 proceedings and therefore He didn't necessarily mean that he's incompetent in 1994. Well, Your Honor, given the type of disorder he had, paranoid schizophrenia, it seems that the court was applying an I'll-know-it-when-I-see-it analysis. But by knowing his ---- Did the trial court judge in 1995 know that he was suffering from paranoid schizophrenia? I believe that's accurate, and I will get back to the court in my rebuttal if that's not the case. But I believe so. I believe that the actual diagnosis was known to the trial court, but I will confirm that for you, Your Honor. Did the trial counsel bring it to his attention or the DA bring it to his attention? The trial counsel did. Yes. And there was also an issue that was brought to the court's attention that, together with this history, when you consider it together, should have alerted the court that there was a bona fide doubt about his competency. On May 22, 1995, a few days before Mr. Triggs testified, he was found at the jail in a catatonic state after biting a guard. He was curled up in a ball. He was nonresponsive. He was trembling. Those facts were brought to the court's attention. And when you take that together with his history, right there you have behavior plus history, which then suggests a bona fide doubt. You brought that incident to the trial court judge's attention. It's my understanding it came to attention through defense counsel. I believe they discussed the matter being continued to the next day for testimony because of it. But, again, I can confirm that for you, Your Honor, on rebuttal. Did defense counsel say, hey, look, Judge, I don't think this guy, my client, is really capable of ---- The trial counsel did not do that in 1995. However, trial counsel in 1994, before the same judge did do that and said that he did not believe that this defendant could cooperate and assist in his defense. Your Honor, I'd like to reserve my remaining time. Thank you. Thank you, counsel. We're from the government. Ms. Haley. May it please the Court. Juliet Haley, appearing for the appellee, Krones. I'd like to just begin with the competency issue. I think what's striking about this case is that the State's never disputed that Mr. Trakes has had a history of mental illness. What is striking to me is that trial counsel's been asked to give declarations whether he had any doubt, and he declared that he did not see any reason to declare a doubt as to his client's competency at the time of this trial. Yet he was, as counsel's pointed out, aware of his history of illness and, in fact, made an argument challenging some of the state of his competency in earlier proceedings years before. The trial judge was also aware. Nobody declared a doubt. Everyone was aware. I mean, counsel and I draw opposite conclusions from the fact that he has a history. Everyone's aware of it. Everyone's thinking about it, and no one declares a doubt. Moreover, what's really significant is that the test of competency is functional. It's about whether or not you can assist counsel in understanding the nature of the proceedings and the facts, and clearly his testimony affirmatively establishes his competency. Well, you know, the standard, though, for the trial court judge to conduct a hearing is a little bit lower than the ultimate question. Isn't that correct? I think that's right, but you have to have a bona fide doubt. There has to be substantial evidence. Well, you know, I was a trial judge for many, many years, both in State court and on the district court, and if somebody had brought to my attention that the defendant was in lockup, in a catatonic state, unable to communicate, I mean, I would say, hey, what's going on? Well, I think that what we see here, though, is what you see is that the attorneys, they're aware of it. I mean, we have the attorneys saying, I talked a lot with Mr. Triggs. We get along very well. Nothing, there's nothing going on in terms of his capacity to assist counsel, his capacity to understand the nature of the proceedings that has been called into question. How do we know that without a hearing? Well. I mean, you start with the premise that everybody knows there's a problem, but there's no hearing and a finding. So how do we know? Well, I think that you don't, you're not entitled to a hearing. I mean, it sort of is a, it puts the cart before the horse, because you're not entitled to a hearing until there's been a level of proof brought by the defendant to establish the bona fide doubt. I mean, the cases that counsel's relying on where this Court has found a bona fide doubt are where, I mean, the third supplemental citation to authorities is a case where the defendant, his defense was insanity. Counsel was saying, I don't think he can work with me. I mean, you have these situations where the people who are working with him, who are closest, are saying, I think there's something wrong here, Judge, and the judge is refusing, notwithstanding. I mean, that's the kind of doubt. This is not, you know, anybody who's ever been 5150'd or had a psychotic break. We're going to have experts and have a hearing. Does the problem have to be brought to the judge's attention, or does the judge have his or her own obligation, a sort of esponte obligation to initiate a hearing? I think, no, the judge definitely has a sua sponte duty if the judge has a bona fide doubt, if there's substantial evidence before the judge. Usually in California the judge was aware that this fellow had a catatonic attack or whatever it was. He was. In lockup. He was. And I think that what's, to me, what's significant is that until these attorneys came onto the case, everyone who has looked at this defendant has questioned his competency at different points, but not at trial. I mean, they had an evidentiary hearing regarding his competency in 1982. I mean, this is not something that was off the radar, that this guy just sort of somehow managed to appear competent and nobody noticed. I mean, everyone's thinking about it pretty critically. But they don't have a hearing. I mean, I think Judge Paez's question is, he's curled up in his cell catatonic. He's obviously not assisting his lawyer. Why doesn't that trigger the court's duty to say, look, let's have a hearing to make sure he's competent? I think because I think that the case law is very clear that you can have brain damage. You can have psychotic states. You can have mental illness. That does not necessarily. I agree with you. But we don't have a record of findings by the court as to that. But if you have your attorney is presenting that there is no, you were not having any problems discussing the case with your client, if you're the trial judge and the defendant gets up and he testifies cogently about his defense, very thoughtfully, clearly understands everything, then you have a duty? I mean, at what point do we put that burden on the trial judge? There's this episode where he's not behaving appropriately in his cell. And then there's, I believe, a short continuance of some sort. When they come back into court, is there any record that the judge inquired of defense counsel or the defendant as to whether the defendant was in a state to proceed or defense counsel believed that the defendant was in a state to proceed? I would think that that would be, I can assure you, I can promise you, that I as a trial judge, which is my primary job, if something like that would have happened, the very first thing I would have done outside the presence of the jury was have the defendant come in and I would have inquired as to, number one, what went on? Number two, how is the defendant today? And number three, what does defense counsel believe the defendant's state is? Has the defense counsel had an opportunity to communicate with him? None of those things happened, right? They just kind of started trial. No, I think what happens is that, I mean, what I think you see is that in everything, you know, the court asks the attorneys, are you ready? Are you ready doesn't mean anything. Are you ready? You ready to go? You got your witnesses? No, I don't. I mean, what I'm saying is that my limited experience as a DA in doing trials is that in California it's appreciating that the judge has its own duty. You do rely on the attorneys because what happens is that the attorney will come in and say, you know what, I'm having a problem with the client. We need to have a declarative. Okay, but this, excuse me, this goes to the question, and I think it's a precise question that Judge Paez asked, did the judge make an independent inquiry? And I think we've all conceded that a trial judge has the obligation to do that. So you have a situation where all this shenanigans goes on, the defendant shows back up, and you are basically taking the position, and maybe it's a correct position, I don't know yet, but you're basically taking the position that the judge is allowed to satisfy their inquiry obligation by assuming that since nobody jumped up and said the defendant is completely berserk, that the defendant is ready to go. In other words, the absence of affirmative allocution from defense counsel regarding the lack of competence of their client allows the trial court to assume the client is ready to go. That's what you're saying, right? I mean, to some extent, yes. I mean, obviously, though, if the judge had contraindications, I mean, if you're a trial judge and the defendant's attorney says nothing, even though everyone's aware of what's going on, and then the defendant gets up and he starts testifying, explaining how he doesn't have knowledge, explaining how he can, you know, identify exhibits, participate absolutely fully, you have a duty under those circumstances? I just have no understanding as to why, after a major episode like this, the judge doesn't take five minutes and make an inquiry of defense counsel. Had the judge taken five minutes and done an inquiry of defense counsel and the defendant himself, not just defense counsel, but the defendant himself, as to his competence and ability to proceed, you wouldn't be arguing this issue. It would be gone, assuming the defendant and defense counsel said, oh, no, we're ready to go, I'm fine. I don't think that under those circumstances, given what happened later, there would be an obligation for the judge to recess the entire trial and have a major hearing. No, I agree, but I think that what you have to understand is the way the California procedure generally works, I mean, for all we know, and I'm not saying this happened, they could have said, there could have been a conversation that was not on the record, because it happens all the time. All we can deal with is on the record. No, I appreciate that, but what I'm saying is that what you're asking in terms of the bona fide duty, the trial court under California law, if there's substantial evidence to declare a doubt, has a duty to, if you declare that doubt, you appoint experts under 1368. It's not a how are you doing. It's a formal proceeding. You are stopping proceedings. I know, but you need to find out whether there's a genuine concern first. And the way you do that is you ask. Now, in the federal court, you don't have that same statute, obviously, but in the federal court, a federal trial court, under those circumstances, if I inquired of a defendant, and I can tell you this has happened, and the defendant appeared to me to be out of it, I recessed the trial, and I did, in fact, have a hearing. But there's been no indication on this record that the defendant appeared in court, giving anyone in the courtroom some concern. No, but I think it's, if you find a defendant catatonic in its cell, isn't that enough to trigger a duty, a limited duty of inquiry to find out whether or not he's able to proceed, able to assist his lawyer? No, I don't. I think it depends on the devil's in the details. I think it depends on what happened. Or he's catatonics. No, but I mean, I think it depends on he shows up, he's ready to go, he gets up and testifies on the stand, he's completely coherent. That's later. I mean, this is the beginning of the day. The judge is informed there's been an episode. No, because I think it goes, I think it goes back to whether or not. In the Federal system, I just can't imagine a district judge not making at least a limited inquiry under those circumstances. I mean, I, so. I think that this judge was very familiar with Mr. Trix. He's had, he'd been appearing before, as counsel's pointed out. This is not, I mean, I would put it to you that if suddenly, you know, before, someone couldn't show up here because they suddenly, you know, collapsed, that would not trigger a duty. I don't think. I think you have to look at all the circumstances. And I don't think that the, and clearly here, he was competent. I mean, I don't think his testimony you can conclude otherwise. I don't think the fact that counsel is telling you, we had a good relationship, I worked well with him, we spoke a lot. And it's clear from his testimony, which is the quintessential act of competency. I mean, he didn't just say yes, yes, yes. He articulated a defense. He clearly understood the facts, understood why he was there, what he was looking at. Did that both at trial and at sentencing. Roberts. We turn to the Confrontation Clause issue. Yes. The Confrontation Clause issue, let's just be very clear. What the State was trying to prove was that burglary in 1982 did not require that you establish that it was a residence as opposed to a commercial structure. So it was not part of the elements. So what the State was trying to prove was that the houses, they were residents, they weren't structures, okay? So this is not like the case you guys, we heard earlier today, where it's like testimony about what happened in the crime. This is a witness's preliminary hearing testimony saying it was my house that was burglarized. I mean, I would just say that goes to a harmless error analysis regardless. It was not a contested issue whether it was a residence. Mr. Triggs could have testified if it was not a residence. He did testify at trial. He could have presented that witness. Let me stop you there. Is it your view under the statute that the defendant has a right to testify to present contrary evidence? In other words, as proof of priors under California law, we have this law that says the State can put in the transcript. We have the cases that say, at least in California, that they don't think that violates due process. Do you think in terms of the scope of the Confrontation Clause, and it's not precisely this case, but the scope of this, the defendant has a right to put on evidence? Well, I think that the only case that we have sort of talking about this, this Court held that he did have a right to present a defense. But the California Supreme Court left the question open. What they wanted to make sure was that sort of in the wave of Lackawanna and Custis, that, you know, we're going to limit the kinds of proof. We're not going to have whole new trials on these adjudicated elements. And so, but, I mean, to answer your question, I think it's an open question within the State. But this Court said, no, what you do is a matter of a right to present a defense. So we're bound by that? Yeah. If he had wanted to put on testimony, if he had wanted to get up and refute that this was a residence, that that was the nature of the structure, and this trial court had said, no, you can't under Guerrero, Reed wasn't decided, then, you know, that would be a different case. But this wasn't a disputed issue. I mean, it wasn't a disputed issue in the sense of what was the nature of the structure. And then going just back to, I mean, counsel saying that the State court didn't address this. I do agree that the State court did not address this subset of a screen issue at the preliminary hearing. But I think as the court, the panel seemed to understand, that case was an identification issue. And defense counsel did not make the appropriate motions to get the lineup done. The court got very irritated, understandably, because it was set for trial, they were ready to go, and said, what can we do as a remedy to preserve your identification issue? And that's what counsel was objecting to. It was like, no, this doesn't preserve it. Okay, yeah, I agree, you can't see him, but this doesn't preserve it. There wasn't a confrontation clause objection in 1982 regarding the preliminary hearing testimony. And I also would say that, so that's what I would speak to at this point. But at any event, it's harmless. And the only thing else I would say is that the State court did address the issue of the Eighth Amendment claim, and it is entitled to ADPA deference. I think that if you look at the State court opinion and at the brief, they were in favor of merits adjudication on the Eighth Amendment claim. The competency claim, was that entitled to ADE, you know? ADPA. ADPA deference. It is not in the sense that counsel is correct that it was brought years later and the State supreme court denied it as untimely. And we did not assert that because it's not a meaningful procedural bar to assert before this Court. I mean, as a practical matter. Thank you. Mr. O'Connell. I'd like to first go back to Judge Paez. The Court asked for what exactly the trial court knew. And I would like to point out just pages 22 to 28 of the opening brief layout in detail, everything that the trial court knew about Mr. Triggs's competency and that historical issue of his schizophrenia. In addition, the trial court did know about the incident at the jail. That is also documented on those pages. The State has argued that Mr. Triggs's counsel said that he had no doubt as to Mr. Triggs's competency. I don't think that's in the record. What's in the record is Mr. Triggs's trial counselor's declaration at 718, at which he said it was his judgment that he didn't need to have Mr. Triggs evaluated. But nowhere does he say that he had no doubt as to his competency. And what it seems has happened is that both the trial court and the counsel missed what was right before them. And unfortunately, they didn't have the expertise to understand the implication of his prior diagnoses and then his incident at the jail on May 22, 2005, shortly before he testified. And all we need to raise is a bona fide doubt as to his competency for the district court. What's the remedy? Excuse me? What's the remedy in habeas? For the competency issue, it would be to send back to the State to retry the case within a certain number of days. I don't think that the Court could remand for a competency hearing, because it is so difficult to make competency determinations retroactively. However, that would be another alternative. But again, I think that the correct remedy would be for the State to retry Mr. Triggs. Assuming there was error. Go ahead. I'm sorry. I'm sorry. The issue would not be whether he's competent today. It would be whether he had been competent then. That's right. So that's why you're saying it would be so difficult. Exactly. They'd have to go back many years. And a snapshot in time. It's so difficult to take and to understand where he was at then. What we can look at now is where he's at today with the psychological examination. But to go back 15 years now since his conviction to determine whether he was competent would be difficult to do. So that would be my approach on that. Well, assuming for the sake of argument that the trial court should have conducted the hearing and that his counsel is ineffective for not requesting it, why aren't those errors harmless in light of his testimony? I mean, he took the stand. He testified in his case. Let's assume that there was a procedural error in not having a competency hearing. Why on this record isn't that harmless error? Well, his testimony itself raised red flags, too. We disagree with the State's characterization of that testimony. During his testimony, the judge had to admonish him that he needed to stop talking. She admonished him at one point that he was going to be shackled. A third time he went off discussing Jesus. Although relevant to the question of why he wouldn't go to Alcoholics Anonymous, he went on at great lengths about Jesus. When you look at his past history, one would see that he has religious preoccupation. That's part of his mental health disorder. So we disagree that the trial testimony alone establishes that he was likely competent. But the error was not harmless given that the result we cannot say that the result would not have been different had there been a competency hearing. Mr. Triggs was not medicated at this trial. And had there been a competency hearing, and if he were refusing medication, it is possible that he would have been deemed not competent, and then, therefore, the proceedings would have changed from there. Thank you for your argument. Thank you very much. Thank you both for your briefs and arguments in this case. And we will be in recess for the morning. Thank you.
judges: Thomas, Paez, Ezra